James T. Russell State Attorney Dade City
QUESTION:
Is it unlawful for a city councilman or employee to purchase and own revenue certificates issued by the city?
SUMMARY:
City council members as municipal officers are generally subject to the proscription contained in s. 839.05, F. S., which prohibits municipal officers from purchasing at a discount or otherwise speculating in any scrip or other evidence of indebtedness issued by the municipal corporation. However, when a city council member purchases revenue certificates at full face value, at lawful rates of interest, and does not otherwise speculate in such certificates, the general proscription contained in s. 839.05 is inapplicable.
According to your letter, certain council members and employees of a municipality within the Sixth Judicial Circuit have purchased and presently own revenue certificates issued by the municipality. You state that the certificates were properly issued by the municipality for the construction of capital improvements and are payable solely from anticipated fees and cigarette tax rebates from the State of Florida. The municipality retains the right to call or redeem any of the revenue certificates remaining outstanding on any interest payment date without penalty or premium or the payment of the additional interest to accrue over the remainder of the life of the certificates. I have been informed that the council members and municipal employees purchased the revenue certificates at face value directly from the city. The certificates bear interest at the rate of 5 percent and 6 percent per annum. The only control that the city council has over the payment of these certificates is that it may elect not to call or redeem any of the certificates remaining outstanding on any interest payment date, thereby insuring that the certificate holders continue to receive the interest accruing over the remaining term of the certificates.
This opinion is limited to the interpretation and application of s. 839.05, F. S., to the instant inquiry. This office cannot render opinions as to the interpretation and application of the Standards of Conduct Law; any question arising under s.112.313(7)(a), F. S., would be within the domain of the Ethics Commission and must, accordingly, be submitted to that body by the affected public officers or employees or by the officer or employee possessing the authority to hire or discharge the affected employees for an advisory opinion. Section 839.05, as amended by s. 242, Ch. 77-104, Laws of Florida, however, provides:
 Any mayor, marshal, treasurer, clerk, tax collector or other officer of any incorporated city or town, or any deputy of such officer, who buys up at a discount, or in any manner, directly or indirectly, speculates in any scrip or other evidence of indebtedness issued by the municipal corporation of which he is an officer, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083, and shall be removed from office.
As a statute which imposes criminal liability, s. 839.05, F. S., must be strictly construed. See Negron v. State, 306 So.2d 104
(Fla. 1974), in which the court stated that criminal statutes are to be strictly construed and applied in the light most favorable to the party against whom they are asserted; see also Nell v. State, 277 So.2d 1 (Fla. 1973), and State v. Alonso, 345 So.2d 740
(3 D.C.A. Fla., 1977). The prohibition contained in s. 839.05 is by its own terms applicable only to municipal officers and any deputies of such officers of the municipality. Therefore, insofar as your question regards municipal employees, s. 839.05 is inapplicable (unless they are deputies of municipal officers).Cf., McQuillin Municipal Corporations ss. 12.136 and 29.97 holding that provisions prohibiting municipal officers from having an interest in contracts of any character of the municipality are merely declaratory of the common-law doctrine and apply to all public officers; they are, however, generally inapplicable to employees. A city council member, however, by virtue of the powers and duties of his office clearly qualifies as a municipal `officer.' See State ex rel. Holloway v. Sheats, 83 So. 508, 509
(Fla. 1919), in which the Florida Supreme Court defined the term `office' as embracing some portion of the sovereign power conferred or defined by law and not by contract. Therefore, with respect to the instant inquiry, the prohibition contained in s.839.05 is applicable to members of the city council as `other officer[s] of' the municipality.
Section 839.05, F. S., seeks to regulate the ownership of `scrip or other evidence of indebtedness' by municipal officers. The revenue certificates issued by the municipality for capital improvements in the instant inquiry are payable from anticipated fees and cigarette tax rebates collected by the State of Florida and distributed to the various municipalities of the state. While such certificates have been deemed to be within the definition of scrip(t) or other evidence of indebtedness, see generally City of Alma v. Guaranty County Savings Bank, 60 F. 203, 207 (8th Cir. 1894); Hall v. United States, 10 F. Supp. 739, 740 (D.C. Cal. 1935); 79 C.J.S. Script; Black's Law Dictionary 1514-15 (4th ed. 1968); and Webster's Dictionary p. 2041, the instant inquiry can be resolved on the issue as to whether the municipal officers purchased at a discount or otherwise speculated in the revenue certificates.
Section 839.05, F. S., only prohibits municipal officers from purchasing scrip or other evidences of indebtedness at a discount or otherwise speculating in these instruments. I have been informed that the city council members referred to in your letter did not buy the revenue certificates at a discount but rather paid the full face value. According to your letter of inquiry, the interest rates on these certificates `are five percent and six percent,' which are less than the maximum rate prescribed by law. Therefore, the application of s. 839.05 to the instant inquiry is dependent in part on the definition of `speculates' within the foregoing statutory provision. The concept of speculation in a business sense differs from that of investment. While the concept of investment involves the laying out of money or capital with the view of obtaining an income or profit, speculation encompasses the elements of risk and uncertainty; a greater degree of risk is involved for the chance of unusually large profits. See Merrill, Lynch, Pierce, Fenner and Smith, Inc. v. Bocock, 247 F. Supp. 373,379 (D.C. Tex. 1965); Wild v. Brown, 183 A. 899, 900 (N.J.App. Ct. 1936) (a speculative investment is one in which there is a substantial danger of loss of principal balanced by a prospect of appreciation of principal or by the receipt of an abnormal rate of income); and Clucas v. Bank of Montclair, 166 A. 311, 313 (N.J. 1933). See also Martin v. Citizens' Bank of Marshallville,171 S.E. 711, 714 (Ga. 1933), in which the court defined speculation as:
 . . . the art of speculating by engaging in business out of the ordinary or dealing with a view of making profits from conjectural fluctuations in price rather than from the earnings or the ordinary profit of trade, or by entering into a business venture involving unusual risks, for a chance of an unusually large gain or profit.
See also 81A C.J.S. Speculates and Speculation.
Applying the foregoing authorities to the instant inquiry, it does not appear that the city council members `speculated' in the purchase of these revenue certificates. The payment on the certificates involved little risk or uncertainty or substantial danger of loss of principal, and it appears unlikely that there was any prospect of appreciation of principal or of receiving an abnormal rate of income or return on the certificates. It might be noted that under the provisions of s. 215.685, F. S., the certificates or other obligations of any type or character issued by municipalities may bear interest at a rate not to exceed 7.5 percent per annum, and when authorized by the State Board of Administration specific issues may bear a rate of interest in excess of the maximum rate. In the instant case, the involved certificates were purchased at full face value and bear interest at rates of 5 percent and 6 percent per annum. There is no evidence that the purchase of these certificates involved any undertaking out of the ordinary course of business. Therefore, I am of the opinion that the city council members, as `other officer[s] of' the municipality, who purchased the revenue certificates at full face value and at lawful rates of interest did not speculate in these revenue certificates within the purview of s. 839.05, F. S., and, accordingly, did not violate and were not within the purview of the general prohibition contained in s.839.05.
Prepared by: Joslyn Wilson, Assistant Attorney General